JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation; | Civil Case No. 8:21-cv-01233-FWS-DFM |
| Plaintiff, | **CONSENT DECREE** |
| vs. | |
| R.J. NOBLE COMPANY, a California corporation, and CARVER PROPERTIES, LLC, a California limited liability company; | **(Federal Water Pollution Control Act, 33 U.S.C. § 1251** *et seq.***)** |
| Defendants. | |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Orange County Coastkeeper ("Plaintiff" or "Coastkeeper"), R.J. Noble Company, a California corporation ("R.J. Noble"), and Carver Properties, LLC ("Landlord" and, with R.J. Noble, each a "Defendant" and together, "Defendants"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

WHEREAS, Orange County Coastkeeper is a non-profit public benefit corporation;

WHEREAS, Orange County Coastkeeper is dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the Santa Ana River and its tributaries;

WHEREAS, Defendant Carver Properties, LLC owns the land located at 15505 E Lincoln Ave., Orange, California 92865;

WHEREAS, Defendant R.J. Noble operates an asphaltic concrete production plant at 15505 E. Lincoln Ave., Orange, California 92865 (the "Facility");

WHEREAS, the Standard Industrial Classification ("SIC") code applicable to the Facility is 2951 (Asphalt Paving Mixtures and Blocks);

WHEREAS, R.J. Noble's operations at the Facility may result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ, as amended in 2018 (effective July 1, 2020) (collectively, as amended, and as may be subsequently amended from time to time, the "Storm Water Permit" or the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. (the "Clean Water Act" or the "CWA") and;

**WHEREAS**, the Storm Water Permit requires all permittees, including R.J. Noble, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, (3) when necessary, implement additional BMPs to reduce and eliminate discharges as necessary to comply with any and all applicable receiving water limitations and/or other requirements set forth in the Permit, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS,** the Storm Water Permit incorporates Federal Storm Water Effluent Limitation Guidelines ("ELGs"), and requires facilities engaged in certain types of industrial activities to comply with U.S. EPA regulations at 40 Code of Federal Regulations Chapter 1 Subchapter N ("Subchapter N"). Industrial facilities engaged in the production of asphalt concrete are subject to ELGs. 40 C.F.R. 443.20. The Federal ELG for asphaltic concrete facilities provides that the best available technology economically achievable is that there "shall be no discharge of process wastewater pollutants to navigable waters." 40 C.F.R. 443.23. RJ Noble is a facility that is required to comply with Subchapter N ELGs.

**WHEREAS**, on May 11, 2021, Coastkeeper issued a 60-day notice letter (the "Notice Letter") to Defendants, their registered agents, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board (the "State Water Board"), the Executive Director of the Santa Ana Regional Water Quality Control Board (the "Regional Water Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Storm Water Permit and the Clean Water Act at the Facility;

**WHEREAS**, on July 19, 2021, Coastkeeper filed a complaint against Defendants (the "Complaint") in the United States District Court, Central District of California (Civil Case No. 8:21-cv-01233) (hereinafter, the "Action");

**WHEREAS**, Coastkeeper alleges Defendants are violating the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS**, Defendants deny all allegations and claims in the Notice Letter and Complaint and deny that they are in violation of the requirements of the Storm Water Permit or the Clean Water Act;

**WHEREAS**, the Settling Parties agree it is in their mutual interest to enter into a Consent Decree in this Action setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and the Complaint without further proceedings;

**WHEREAS**, the Settling Parties agree that all references hereinafter to R.J. Noble's future compliance with the "Storm Water Permit" shall refer to the then-effective version of the Storm Water Permit;

**WHEREAS**, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Storm Water Permit; and

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3.    The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4.    Coastkeeper has standing to bring this action.

5.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as

1   is necessary for the Court to resolve any motion to enforce this Consent Decree.

2   **I.      AGENCY REVIEW AND TERM OF CONSENT DECREE**

3          6.      Plaintiff shall submit this Consent Decree to the United States Department of
4   Justice and EPA (collectively, the "Federal Agencies") within three (3) business days of
5   the final signature of the Parties for agency review consistent with 40 C.F.R. § 135.5. The
6   Federal Agencies' review period (the "Agency Review Period") expires forty-five (45)
7   days after receipt of this Consent Decree by the Federal Agencies, as evidenced by certified
8   return receipts, copies of which shall be provided to Defendants upon request. In the event
9   that the Federal Agencies comment negatively on or object to entry of this Consent Decree,
10  the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the
11  Federal Agencies within a reasonable amount of time, not to exceed thirty (30) days.

12         7.      Following expiration of the Agency Review Period, Coastkeeper shall submit
13  the Consent Decree to the Court for entry.

14         8.      The term "Effective Date" as used in this Consent Decree shall be the date of
15  entry by the Court.

16         9.      This Consent Decree shall terminate three (3) years from the Effective Date,
17  unless (i) an Action Plan (as hereinafter defined) is required per paragraph 20 below, based
18  on sampling results from the 2025-2026 reporting year[1], in which case the Consent Decree
19  will terminate upon one year after complete implementation of the measures described in
20  the Action Plan, and/or (ii) if there is an ongoing, unresolved dispute regarding Defendants'
21  compliance with this Consent Decree, in which case the Consent Decree will terminate
22  within fifteen (15) days' notice by the Settling Parties that the dispute has been fully
23  resolved.

24  **II.     COMMITMENTS OF THE SETTLING PARTIES**

25         **A.      Storm Water Pollution Control Best Management Practices**

26         10.     In addition to maintaining the current BMPs at the Facility, R.J. Noble shall
27  develop and implement the BMPs identified herein, as well as any other BMPs necessary

28

---

[1] A "reporting year" is July 1 to June 30.

to comply with the provisions of this Consent Decree and the Storm Water Permit. Specifically, R.J. Noble shall develop and implement BMPs to prevent and/or to reduce contamination in storm water discharged from the Facility consistent with BAT and BCT and/or when necessary to support attainment of water quality standards ("WQS").

11. <u>BMPs</u>. No later than July 1, 2023, R.J. Noble shall develop and fully implement the following BMPs at the Facility:

11.1. Replacement of the current on-site rain gauge with a digital rain gauge capable of measuring and recording rainfall from at least 0.1 inches. R.J. Noble shall maintain records of rain gauge data and provide Coastkeeper with rain gauge records within fifteen (15) days of a request.

11.2. Conduct an infiltration test at Drainage Area 1 (as depicted on the Facility SWPPP map) to determine whether the existing infiltration wells are sufficient to infiltrate all storm water from a 1.0" 24-hour storm event for that drainage area. If the test results determine Drainage Area 1 can infiltrate all storm water from a 1.0" 24-hour storm event, obtain certification from a licensed professional engineer regarding the same and include such certification in the Facility SWPPP. If the test results determine Drainage Area 1 cannot infiltrate all storm water from 1.0" 24-hour storm event, prepare an Action Plan in accordance with paragraph 20 below.

11.3. <u>Storm Water Practitioner</u>. By February 1, 2023, R.J. Noble shall retain a Qualified Industrial Storm Water Practitioner (a "QISP," as defined in Section IX.A of the Permit) to assist with permit compliance including, but not limited to, developing a plan for pumping storm water around the site if necessary.

11.4. <u>Advanced or Structural BMPs at Stormwater Vault and Treatment</u>: Deploy effective filter socks or straw wattles at all drain inlets and at the base of all stockpiles in advance of forecasted rain events. R.J. Noble shall

maintain records of treatment system, filter, and filter media maintenance/replacement and provide Coastkeeper with such records within fifteen (15) days of a request. R.J. Noble shall maintain records of storm water vault/tank capacity, pump usage and duration, and water truck usage during storm events and provide Coastkeeper with such records within fifteen (15) days of a request. Any reinjection of storm water into the Facility's groundwater well must be documented in the Facility's SWPPP, properly permitted by the appropriate agencies, and certified by appropriate professionals licensed in the State of California.

11.5.   <u>BMP Work Plan.</u> No later than May 1, 2023, R.J. Noble shall prepare and submit to Coastkeeper for its review and comment, a draft BMP Work Plan describing additional BMPs that R.J. Noble will implement to comply with the Storm Water Permit and this Consent Decree. The Work Plan shall include, but is not limited to, a description of additional BMPs R.J. Noble will implement sufficient to treat and/or retain a 10-year, 24-hour storm. Coastkeeper acknowledges that BMPs are already in place at the Facility and the Parties agree that RJ Noble will work with its QISP[2] to evaluate and implement further BMPs as necessary to comply with the Storm Water Permit. R.J. Noble agrees that, until such BMP Work Plan is implemented, R.J. Noble will continue to maintain its treatment system, including a treatment flow rate of at least 160 gallons per minute. Coastkeeper shall have thirty (30) days upon receipt of the BMP Work Plan to provide R.J. Noble with comments. Within thirty (30) days of receiving Coastkeeper's comments on the BMP Work Plan,

---

[2] R.J. Noble has identified and intends to use Tim Simpson of GSI Environmental as its QISP. Should R.J. Noble decide to utilize another QISP, it will provide Coastkeeper fifteen (15) days' notice and an opportunity to comment. If the Parties cannot agree on the replacement QISP, any dispute regarding the selection will be subject to the Dispute Resolution provisions in Section III of this Consent Decree.

R.J. Noble shall accept and incorporate Coastkeeper's comments into the Work Plan, or R.J. Noble shall justify in writing why any comment is not incorporated. R.J. Noble shall complete construction or installation of the additional BMPs, or combination of BMPs, in accordance with the Work Plan by no later than October 1, 2023 unless this date is extended by mutual agreement of the Parties based on a showing of good cause.

11.6.  Confirmation of Completion. R.J. Noble shall provide Coastkeeper with written documentation demonstrating that the required BMPs have been implemented in compliance with paragraph[s] 11.1-11.5 above within fifteen (15) days of completion in each case. R.J. Noble shall diligently (i) file and pursue all required permit applications for any structural BMPs and (ii) procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

11.7.  Landlord Approval. To the extent that implementation of any of the BMPs described in this Consent Decree require Landlord's consent, such consent shall not be unreasonably withheld or delayed.

## B.  Storm Water Sampling

12.  Sampling. The following storm water monitoring procedures shall be implemented at the Facility:

12.1.  Frequency. During the life of this Consent Decree, R.J. Noble shall collect samples from each time the Facility discharges storm water, retained storm water, or any other effluent. At least once during each reporting year, R.J. Noble shall collect and compare samples from (i) the pre-treatment storm water vault and (ii) post-treatment effluent to analyze the efficacy of the treatment system. To the maximum extent feasible, the treatment system efficacy sampling discussed in the second sentence of this paragraph 12.1 shall be conducted during a site inspection held pursuant to paragraph 26 below.

12.2.   <u>Documentation</u>. To document the storm water discharge and discharge location, an employee shall take photographs of the storm water discharge and discharge location when samples are collected (the "Sampling Photographs").

12.3.   <u>Parameters</u>. All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1.

12.4.   <u>Lab</u>. Except for pH samples, a laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree. Unless otherwise required by the Storm Water Permit, analysis of pH shall be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

12.5.   <u>Detection Limits</u>. R.J. Noble shall require that the laboratory use analytical methods adequate to detect the individual parameters at or below the values specified in Table 1 or the Storm Water Permit, whichever is lower.

12.6.   <u>Holding Time</u>. All samples collected from the Facility shall be delivered to the laboratory and analyzed within the holding times required in 40 CFR Part 136.

12.7.   <u>Reporting</u>. R.J. Noble shall submit sampling results from discharge events to SMARTS no later than thirty (30) days from receipt in accordance with the Storm Water Permit and provide the complete lab results and all Sampling Photographs to Coastkeeper simultaneously as the sampling results are submitted to SMARTS. In the case of sampling for treatment efficacy in accordance with paragraph 12.1 above, R.J. Noble shall provide the complete lab results to Coastkeeper no later than thirty (30) days from receipt.

**C.   Visual Observations**

13.   <u>Storm Water Discharge Observations</u>. During the life of this Consent Decree,

R.J. Noble shall conduct visual observations in accordance with Permit Section XI.A.2 during every sampling event at each location where storm water is discharged from the Facility, and take photographs of each discharge location.

14.　　<u>Storm Water Observations Without Discharge</u>. During the first two reporting years of this Consent Decree, R.J. Noble shall conduct visual observations of the Facility perimeter during each rain event where at least 0.5 inches of rainfall has been recorded during Facility's normal business hours, even if there is no discharge from the facility. R.J. Noble shall take photographs of each drainage area, infiltration wells, and all discharge locations to show compliance with this section. The Parties may require additional structural BMPs to be photographed in accordance with this paragraph 14 during the BMP Work Plan draft, review, and comment period described in paragraph 11.5 above.

15.　　<u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, R.J. Noble shall conduct monthly non-storm water visual observations at each discharge location, including discharge locations outside of the Facility boundary.

16.　　<u>Visual Observation Records</u>. R.J. Noble shall maintain observation records and photographs to document compliance with paragraphs 13-15 above, and shall provide Coastkeeper with copies of such records within fifteen (15) days of receipt of Coastkeeper's written request.

**D.　Employee Training**

17.　　Within thirty (30) days of the Effective Date, R.J. Noble shall develop and implement an employee training program that meets the following requirements and ensures (1) a sufficient number of employees at the Facility designated to achieve compliance with the Storm Water Permit and this Consent Decree, and (2) such employees are properly trained to perform the activities required by and to achieve compliance with the Storm Water Permit and this Consent Decree (the "Training Program"). At a minimum, the Training Program shall include the following:

17.1.　　<u>Non-Storm Water Discharges</u>. Employees shall be trained on the Storm Water Permit's prohibition of non-storm water discharges so that

employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges, including use of unplumbed sinks.

17.2.   Prohibition on Process Wastewater Discharges: Employees shall be trained on the prohibition of process wastewater discharges so that employees know that the discharge of process wastewater pollutants is prohibited, that storm water that commingles with process waste water cannot be discharged under any circumstance, and how to prevent the commingling of storm water with process wastewater.

17.3.   The SWPPP and BMPs. R.J. Noble shall train all employees, except office-only staff, on the SWPPP and, specifically, BMP implementation and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water, prevent the discharge of contaminated storm water, and ensure the proper treatment of storm water at the Facility. This training should include the requirements and additional BMPs outlined in paragraph 11 above. This training should also include an overview of the Santa Ana River watershed and explanation of why pollution is harmful thereto.

17.4.   Visual Observation. R.J. Noble shall provide training to the members of its Pollution Prevention Team as identified in the SWPPP on how and when to properly conduct and record visual observations.

17.5.   Storm Water Sampling. R.J. Noble shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree and the Storm Water Permit, including backup employees. The Training Program shall include training sufficient to ensure (i) proper sampling protocols, including chain of custody requirements, are followed at all times and (ii) storm water samples are

properly collected, stored, and submitted to a certified laboratory.

17.6. <u>Training Implementation</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the Storm Water Permit.

17.7. <u>Language</u>. The Training Program shall be conducted and all training materials shall be made available in the language in which the employee(s) participating in the Training Program are fluent. If necessary to accomplish the foregoing or where translation would otherwise contribute to (i) staff comprehension of the Training Program and/or (ii) compliance with this Consent Decree and the Storm Water Permit, R.J. Noble shall provide translation services at all training sessions and of training materials.

17.8. <u>Training Program Frequency</u>. The Training Program shall be repeated annually or more frequently as necessary to ensure all relevant employees are familiar with the requirements of this Consent Decree and the Storm Water Permit. All new staff shall receive this training within thirty (30) days of hiring or sooner if necessary to ensure training is received before assuming responsibilities for compliance with this Consent Decree or the Storm Water Permit.

18. <u>Training Records</u>. R.J. Noble shall maintain training records to document compliance with this section, and shall provide Coastkeeper with a copy of such records within fifteen (15) days of receipt of Coastkeeper's written request.

**E.   Reduction of Pollutants in Discharges**

19. <u>Storm Water Contaminant Reduction</u>. R.J. Noble shall develop and implement BMPs such that contaminants in storm water discharges from the Facility maintain concentrations that are equal to or less than the NALs described in the Storm Water Permit for pollutants identified during the pollutant assessment described in paragraph 23.6 below. Beginning in the 2023-2024 reporting year and for the remainder

of the term of this Consent Decree, any two exceedances of any Table 1 Numeric Value below, except Dissolved Copper and Dissolved Zinc, shall trigger the Action Plan requirements set forth in paragraph 20 below. Any exceedances of the Table 1 Numeric Values for Dissolved Copper or Dissolved Zinc shall not trigger an Action Plan.

**Table 1. Numeric Values for Storm Water Discharges**

| Parameter | Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | Storm Water Permit |
| Oil and Grease | 15 mg/L | Storm Water Permit |
| Total Recoverable Aluminum | 0.75 mg/L | Storm Water Permit |
| Total Recoverable Iron | 1.0 mg/L | Storm Water Permit |
| N+N | 0.68 mg/L | Storm Water Permit |
| Chemical Oxygen Demand | 120 mg/L | Storm Water Permit |
| Biological Oxygen Demand | 30 mg/L | Storm Water Permit |
| Total Recoverable Copper | 0.0332 mg/L | Storm Water Permit |
| Total Recoverable Zinc | 0.26 mg/L | Storm Water Permit |
| Dissolved Copper | 0.013 mg/L | CTR |
| Dissolved Zinc | 0.12 mg/L | CTR |
| pH | 6.5 – 8.5 S.U. | Basin Plan |

20.  Action Plan. In the event the requirement to prepare an Action Plan is triggered at the Facility pursuant to paragraphs 11.2 or 19 above, R.J. Noble shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating the discharge of the contaminant in question or increasing infiltration capacity in Drainage Area 1, as applicable, during the next reporting year at the Facility (an "Action Plan"). In any year that an Action Plan is required, such Action Plan shall be submitted within eight (8) weeks of R.J. Noble's receipt of the infiltration test results or storm water sample lab report triggering the Action Plan.

20.1.  Requirements. Each Action Plan submitted shall include, at a minimum, in the case of a Table 1 Value exceedance: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Value(s), (2) an assessment of the source of each contaminant

exceedance, (3) the identification of additional BMPs, including storm water treatment or other appropriate measures, that shall be implemented to achieve compliance with the Table 1 Value(s), and (4) time schedules for implementation of the proposed BMPs. An Action Plan submitted in connection with a Drainage Area 1 infiltration test result shall include, at a minimum: (1) the identification of the storm size Drainage Area 1 is currently sized to infiltrate, (2) the identification of additional BMPs, including additional infiltration wells or other appropriate measures, that shall be implemented to increase infiltration capacity to a 1.0" storm, and (3) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as possible, but in no event later than October 1 of the reporting year immediately following the submission of the Action Plan, unless a later implementation date is agreed upon by the Parties.

20.2.   <u>Action Plan Review</u>. Coastkeeper shall have thirty (30) days upon receipt of R.J. Noble's Action Plan to provide R.J. Noble with comments. Within thirty (30) days of receiving Coastkeeper's comments on the Action Plan, R.J. Noble shall accept and incorporate Coastkeeper's comments into the Action Plan, or, alternatively, justify in writing why any comment is not being incorporated. Any disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan and/or R.J. Noble's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

21.    When an Action Plan is completed, R.J. Noble shall revise the Facility

SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes, as required under Section X.B of the Storm Water Permit. R.J. Noble shall notify Coastkeeper in writing when the Action Plan has been implemented and submit the revised SWPPP to Coastkeeper for review and comment as set out in paragraphs 23 and 24 below.

22.    <u>Action Plan Payments</u>. If R.J. Noble is required to submit an Action Plan to Coastkeeper in accordance with paragraphs 11.2 or 20 above, R.J. Noble shall make a payment of Five Thousand and No/100 Dollars ($5,000.00) per Action Plan concurrently with each Action Plan submittal. Such payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

**F.    Storm Water Pollution Prevention Plan**

23.    <u>SWPPP</u>. Within thirty (30) days of the Effective Date, R.J. Noble shall prepare a draft amendment of the Facility's SWPPP to incorporate the requirements of the Storm Water Permit and this Consent Decree, including but not limited to the following:

23.1.    Identify the individual(s) responsible for compliance with the Storm Water Permit and this Consent Decree, including the positions and persons responsible for specific areas of compliance (e.g., John Doe: collecting storm water samples) and their backups;

23.2.    Include accurate Facility operating hours;

23.3.    Revise the facility site map and site description to reflect all discharge locations, all areas associated with ongoing industrial activities, and all other requirements of the Storm Water Permit and this Consent Decree including but not limited to building expansion(s), locations of all catch basins and their connections, changes to storm water flow on the ground surface via pumps or otherwise, impervious and pervious areas, covered areas, all stockpile areas, and all areas utilized by third-party trucking entities on Defendants' premises;

23.4.    Revise the pollutant source assessment to include all identified

pollutants, including specific metal pollutants, associated with industrial activity at the Facility;

23.5.   Revise the monitoring plan to address all pollutants identified in the pollutant source assessment and this Consent Decree;

23.6.   Include sample analysis for all applicable pollutants including, at a minimum, those listed in Table 1;

23.7.   Satisfy the Storm Water Permit's sampling and monitoring requirements including but not limited to, updating the facility's sample locations and sampling analysis parameters;

23.8.   Update all BMPs, including, but not limited to, BMPs required pursuant to paragraph 11 above;

23.9.   Include details on the treatment system, specifically constituents to be treated, design flow rate, the treatment processes and media, and the schedule for treatment system maintenance;

23.10.   Include details regarding onsite water storage capacity;

23.11.   Include details regarding onsite infiltration capacity;

23.12.   Include details and a protocol regarding pumping water around the facility pursuant to a plan prepared by a QISP;

23.13.   Include details regarding the street sweeper dumping pond; and

23.14.   Update the Facility's Exceedance Response Action status, if applicable.

24.   Revising the SWPPP. R.J. Noble shall revise the Facility SWPPP if there are any changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facility, whether made pursuant to an Action Plan or not, within thirty (30) days of the occurrence of any of the above-listed events.

25.   Commenting on Revised SWPPPs. R.J. Noble shall submit each draft revised or amended SWPPP to Coastkeeper for review and comment within fifteen (15) days of its

completion. Coastkeeper shall provide comments, if any, to R.J. Noble within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Coastkeeper's comments on the SWPPP, R.J. Noble shall accept and incorporate Coastkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or R.J. Noble's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

### G.   Compliance Monitoring and Reporting

26.   <u>Site Inspections</u>. To verify compliance with the implementation of BMPs as described in this Consent Decree, the Parties' consultants shall conduct up to two (2) site inspections per year at the Facility during the life of this Consent Decree. In addition, Coastkeeper and its representatives, including Coastkeeper counsel, may conduct one additional site inspection upon implementation of the BMPs identified in paragraph 11 above. In the event of a dispute between the Settling Parties regarding Defendants' compliance with this Consent Decree, and provided a site inspection would be relevant to resolving such dispute, the Settling Parties agree to meet and confer regarding an additional site inspection, which inspection shall not be unreasonably denied.

26.1.   The site inspections shall occur during normal business hours. Coastkeeper shall provide R.J. Noble with forty-eight (48) hours' notice prior to any wet weather site inspection and seventy-two (72) hours' notice prior to any dry weather site inspection. Notice will be provided via electronic mail to the notice recipient(s) designated in paragraph 44 below. For any site inspection requested to occur in wet weather, Coastkeeper shall be entitled to adjust timing during normal business hours or reschedule the inspection for an alternative date during normal business hours in the event that the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. As used throughout this

paragraph 26.1, "normal business hours" shall mean and refer to 6AM-4PM Monday-Friday. Site inspections shall be limited to three (3) hours unless otherwise agreed by the Parties based on unforeseen circumstances.

26.2.   During the site inspections, Coastkeeper's consultant and/or its representatives, as present during the inspection in accordance with paragraph 26.1 above, shall be allowed access to the Facility's SWPPP, visual observation records, employee training records, and other monitoring records, reports, photographs, and sampling data for the Facility.

26.3.   During the site inspections, Coastkeeper's consultant and/or its representatives, as present during the inspection in accordance with paragraph 26.1 above, may inspect and collect samples of discharges and/or contained storm water from the Facility and take photos and/or videos related to Storm Water Permit and/or Consent Decree compliance. A certified California laboratory shall analyze samples collected by Coastkeeper and copies of the lab reports shall be provided to R.J. Noble within five (5) business days of Coastkeeper's receipt.

27.   <u>Compliance Monitoring and Oversight</u>. Defendants agree to partially defray costs associated with Coastkeeper's monitoring of Defendants' compliance with this Consent Decree in the amount of Forty-Five Thousand and No/100 Dollars ($45,000.00), which payment shall be made no later than May 1, 2023. Payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

28.   <u>Reporting and Document Provision</u>. During the life of this Consent Decree, within thirty (30) days of receipt of Coastkeeper's written request, Defendants shall provide Coastkeeper with a copy of all documents, monitoring and/or sampling data, written communications, and/or correspondence related to compliance with the Storm Water

Permit that are submitted to the Regional Water Board, State Water Board, and/or any Federal, State, or local agency, county, or municipality. Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any documents, written communications, and/or correspondence related to Defendants' compliance with the Storm Water Permit and/or to storm water quality received by Defendants from any Federal, State, or local agency, county or municipality shall be provided to Coastkeeper within fifteen (15) days of receipt by Defendants.

### H. Environmental Mitigation Project, Litigation Fees and Costs, Stipulated Penalties and Interest.

29.     Environmental Mitigation Project. To remediate the environmental harms alleged to have resulted from the allegations in the Complaint, Defendants agree to make a payment of Eighty-Seven Thousand and Five Hundred Dollars ($87,500.00) to the Huntington Beach Wetlands Conservancy (the "HBWC"), to fund environmental project activities that will benefit Southern California waters, including restoration and/or preservation of the Santa Ana River watershed. The payment shall be due on July 1, 2023 and made via check payable to the "Huntington Beach Wetlands Conservancy" and delivered to: P.O. Box 5903, Huntington Beach, CA 92615. Defendants shall provide Coastkeeper with a copy of such payment and copy Coastkeeper and its attorneys on any related correspondence.

30.     Coastkeeper's Fees and Costs. To partially reimburse Coastkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating resolution of this matter, Defendants shall pay a total of Four Hundred Ninety-Five Thousand and No/100 Dollars ($495,000.00). Provided that the Federal Agencies have not commented negatively on or objected to the entry of this Consent Decree, the payment shall be made within fifteen (15) days of the end of the Agency Review Period. If the Federal Agencies have commented negatively on or objected to the entry of this Consent Decree, the payment shall be made within fifteen (15) days of the approval and entry of

the Consent Decree by the Court. The payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

31.    <u>Stipulated Payment</u>. R.J. Noble shall make a stipulated remediation payment of One Thousand and No/100 Dollars ($1,000.00) for any and each missed deadline specified in this Consent Decree not previously extended in writing by the Settling Parties. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by R.J. Noble's discharges and shall be made to HBWC identified above and delivered via check or wire transfer. R.J. Noble agrees to make the stipulated payment within thirty (30) days of the missed deadline. R.J. Noble shall provide Coastkeeper with a copy of each such payment at the time it is made.

32.    <u>Interest on Late Payments</u>. R.J. Noble shall pay interest on any payments, fees, or costs owed to Coastkeeper under this Consent Decree that Coastkeeper does not receive by the due date. The interest shall accrue starting the first day after the payment was due and shall be computed at a rate of 1.5% per month (18% per year). Interest on late payments shall be made payable to Coastkeeper and delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

## III.    DISPUTE RESOLUTION

33.    <u>Court Enforcement Authority</u>. This Court shall retain jurisdiction over this matter for the life of this Consent Decree for the purposes of enforcing the terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

34.    <u>Meet and Confer</u>. A Settling Party shall invoke the dispute resolution procedures of this Section III by notifying all other Settling Parties in writing of the matter(s) in dispute and the disputing party's proposal for resolution. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10)

days from the date of the notice in an attempt to fully resolve the dispute within thirty (30) days. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

35.    <u>Formal Resolution</u>. If the Settling Parties cannot resolve a dispute through the meet and confer process discussed above, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

36.    <u>Fees and Costs</u>. If intervention by the District Court is required, civil penalties and litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing or substantially prevailing party in accordance with the standard established by Section 505 of the Clean Water Act, <u>33 U.S.C. §§ 1365(d)</u> and <u>1319(d)</u>.

## IV.    <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

37.    <u>Coastkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives, hereby releases Defendants and each of their current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives) of and from, and waives all CWA claims which were or could have been asserted in Coastkeeper's Complaint up to and including the Termination Date of this Consent Decree.

38.    <u>Defendants' Release</u>. Upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives, hereby release Coastkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of

their successors and assigns, and its agents, attorneys, and other representatives) of and from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed for matters related to, or which could have been asserted in response to, Coastkeeper's Complaint up to and including the Termination Date of this Consent Decree.

## V.   **MISCELLANEOUS PROVISIONS**

39.   <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs, nor any payment made pursuant to this Consent Decree shall constitute or be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or liability, nor as an admission of violation of any law, rule, or regulation.

40.   <u>Force Majeure</u>. No Settling Party shall be considered to be in default in the performance of any of its respective obligations under this Consent Decree when performance becomes impossible due to an event of Force Majeure. Force Majeure includes any act of God, war, fire, earthquake, windstorm, natural catastrophe; civil disturbance, vandalism, pandemic (other than COVID-19), sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

41.   <u>Construction</u>. The language in all parts of this Consent Decree shall be

construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

42.     <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

43.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

44.     <u>Correspondence</u>. All documents and/or notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by electronic mail or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or courier, as follows:

<u>If to Plaintiffs:</u>

Orange County Coastkeeper
Attn: Legal Department
Email: <u>Sarah@coastkeeper.org</u> & <u>Lauren@coastkeeper.org</u>
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

<u>If to Defendants:</u>

Scott Fraser
R.J. Noble Company
15505 E. Lincoln Ave.
Orange, CA 92865
Attn: Scott Fraser
ScottFraser@rjnoblecompany.com

With copy to:

Jerry A. Behnke
Partner, Larson LLP
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
jbehnke@larsonllp.com

Any change of address or addresses shall be communicated in the manner described

above for giving notices. Notifications of communications shall be deemed submitted immediately after acknowledgement of receipt via email by the receiving party or the next business day after having been deposited with an overnight mail/delivery service except in the case of notification of payment of stipulated penalties, which shall be deemed paid on the date Defendants notify Coastkeeper that payment has been made.

45.     Effect of Consent Decree. Nothing in this Consent Decree shall be construed to affect or limit in any way Defendants' obligations to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree. Compliance with this Consent Decree shall not be deemed to constitute compliance with the Storm Water Permit, the Clean Water Act, or any other law, rule, or regulation.

46.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

47.     Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, extended, or terminated unless by a written instrument, signed by the Settling Parties and approved by the Court. Unless otherwise specified herein, any request to modify any provision of the Consent Decree, including, but not limited to, any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

48.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

49.     Negotiated Settlement. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and/or ambiguity shall not be interpreted against any one party.

50.     Integration Clause. This is an integrated Consent Decree. This Consent

Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

51.   <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify s/he is fully authorized by the party whom s/he represents to enter into the terms and conditions of this Consent Decree. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

52.   <u>Assignment</u>. All of the rights, duties, and obligations contained in this Consent Decree shall apply to and bind the Settling Parties, and any successors or assigns. Defendant shall notify Plaintiffs within ten (10) days of any assignment.

53.   <u>Validity</u>. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____January 13_____, 2023      By: _____
                                            Garry Brown
                                            Orange County Coastkeeper


Dated: _____, 2023              By: _____
                                            Name: _____
                                            Title: _____


Dated: _____, 2023              By: _____
                                            Name: _____
                                            Title: _____


APPROVED AS TO FORM

                                            ORANGE COUNTY COASTKEEPER

Dated: _____January 13_____, 2023      By: _____
                                            Lauren Chase
                                            Attorney for Plaintiffs

                                            LARSON LLP

Dated: _____, 2023              By: _____
                                            Jerry A. Behnke
                                            Attorney for Defendants


**IT IS SO ORDERED.**                       UNITED STATES DISTRICT COURT
                                            CENTRAL DISTRICT OF CALIFORNIA


Date: _____, 2023                 _____
                                            Honorable Fred W. Slaughter

---

Consent Decree                  26          Civil Case No. 8:21-cv-01233-FWS-DFM

1      **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as

2    of the date first set forth below.

3    APPROVED AS TO CONTENT

4

5

6    Dated: _____, 2023    By: _____

                                          Garry Brown

7                                          Orange County Coastkeeper

8

9    Dated: _____January 13__, 2023    By: _____

                                          Name: Austin Carver

10                                      Title: President, R.J. Noble Company

11

12    Dated: _____January 13__, 2023    By: _____

                                          Name: Austin Carver

13                                        Title: Member, Carver Properties

14    APPROVED AS TO FORM

15                                        ORANGE COUNTY COASTKEEPER

16    Dated: _____, 2023    By:_____

17                                          Lauren Chase

18                                        Attorney for Plaintiffs

19                                        LARSON LLP

20    Dated: _____January 13__, 2023    By: _____

21                                          Jerry A. Behnke

22                                        Attorney for Defendants

23

24    **IT IS SO ORDERED.**                UNITED STATES DISTRICT COURT

                                          CENTRAL DISTRICT OF CALIFORNIA

25

26    Date: __March 10____, 2023

27                                          Honorable Fred W. Slaughter

                                          UNITED STATES DISTRICT JUDGE

28